IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 3, 2015

**STATE OF TENNESSEE v. EDDIE MINTER**

**Appeal from the Criminal Court for Shelby County**
**No. 14-01289     John W. Campbell, Judge**

---

**No. W2015-00540-CCA-R3-CD  -  Filed February 8, 2016**

---

The defendant, Eddie Minter, was convicted of two counts of aggravated robbery, a Class B felony, and sentenced to consecutive terms of fourteen years and eighteen years.  On appeal, he argues that the evidence is insufficient to sustain his convictions.  Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ., joined.

Stephen C. Bush, District Public Defender; Barry W. Kuhn (on appeal) and Constance J. Barnes (at trial), Assistant Public Defenders, for the appellant, Eddie Minter.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Lessie L. Rainey, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On March 11, 2014, the Shelby County Grand Jury returned a two-count indictment against the defendant, charging him in Count 1 with the aggravated robbery of Mohammed Al Shugaa, an employee of the Shop and Save store in downtown Memphis, and in Count 2 with the aggravated robbery of Abdo Al Khader, the owner of the store.

Testifying through an interpreter, Mr. Al Khader, said that he was working at the store on the evening of November 13, 2013, when two men wearing red masks entered the store.  One of the men pulled a gun and said, "[N]obody moves," and the other man

went behind the cash register. The gunman, later identified as the defendant, "pointed the gun through the hole towards Mohammed [Al Shugaa] and he told him don't move, give me the money." The defendant then pointed the gun toward Mr. Al Khader, ordered him to lie down on the floor, and took his wallet and cash, which was between $1100 and $1200. The other robber took the money from the cash register and then took Mr. Al Shugaa to the back of the store. The defendant pushed Mr. Al Khader up from the floor. Mr. Al Khader grabbed the defendant's hand, and a struggle ensued. The defendant called for the other robber to come from the back of the store, and Mr. Al Khader was hit on the head with a gun. Mr. Al Khader then pulled out his gun, but one of the robbers grabbed it from his hand and hit him a second time. Mr. Al Shugaa came from the back of the store to aid Mr. Al Khader but also was hit by one of the robbers. As the robbers were trying to flee the store, Mr. Al Khader grabbed the defendant, pulling off his jacket and mask and tearing his shirt in the process.

Mr. Al Khader said that the police arrived about ten to fifteen minutes after the robbery. Officers later brought the defendant, who they "found between the store and the next block," to the store. Mr. Al Khader identified the defendant as the gunman and said that he was still wearing the same shirt he had on during the robbery. The police subsequently recovered Mr. Al Khader's wallet. Mr. Al Khader identified the video recording of the robbery taken on the store's security cameras.

Mohammed Al Shugaa testified that he was working behind the cash register at the store on November 13, 2013, when two masked men rushed in. One of the men put a gun in his face and said, "[O]pen the register or I'll kill you." The other man came behind the cash register, held Mr. Al Shugaa by the neck, and demanded that he open the register. Mr. Al Shugaa opened the register, and the man took approximately $500-$600 and some cigars. The man then pulled Mr. Al Shugaa to the back of the store and threatened him. Mr. Al Shugaa heard Mr. Al Khader "crying out," got a broomstick, and went back to the front of the store to aid Mr. Al Khader. The robbers and Mr. Al Khader were struggling, and the gunman hit Mr. Al Khader on the head. Mr. Al Shugaa then hit the gunman with the broomstick, and the robbers fled. Mr. Al Shugaa acknowledged that the robbers did not take anything from him personally. He said that he was "scared for [his] life" during the ordeal.

Yolanda Cribbs testified that she was working in the back of the store on November 13, 2013, when she heard "a big shove." As she took two or three steps toward the front of the store, she saw two men in the store, one pointing a gun at Mr. Al Khader and the other trying to go behind the counter. Realizing that a robbery was taking place, Ms. Cribbs dropped to the floor, crawled behind the "beer box," and called 9-1-1. She remained in the back of the store until the police arrived. Ms. Cribbs described the tennis shoes that one of the robbers wore as "Air Max and I'm thinking they were a

blackish/greenish.  I know they w[ere] white.  Some of it was white, the back of it was black, and he had the little air holes right here and then it was the whiteness going around there."

Officer Charles W. Malone, Jr., of the Memphis Police Department testified that he secured the scene of the robbery and talked to the victims.  He noted two items of importance to point out to crime scene investigators:  a stick that had been used in the fight between one of the victims and the suspects and some torn clothing.  A broadcast was issued for the suspects, including a general clothing description and the fact that the suspects had been injured during a fight.

Officer Keith Phillips of the Memphis Police Department testified that he and other officers set up a four-street perimeter in the direction the suspects were last seen running.  Officers found what appeared to be a red shirt that had been torn in half and made into a bandanna about 200 yards from the Shop and Save store.  Officers then discovered the defendant, who was wearing a white t-shirt and blue jeans, lying face-down in a field about 75 to 100 yards from the location of the red bandanna.  The defendant "appeared to have been roughed up a little bit . . . like he had been in some type of physical altercation with someone."  Officers found the victim's wallet about a foot from the defendant's left side, as well as store receipts and cash.  The defendant was taken into custody.

Officer Adam Pickering of the Memphis Police Department Crime Scene Unit identified photographs he took of a black sweatshirt found inside the store between the door and the front counter; a torn white cloth that appeared to be t-shirt material and a broken broom handle found in the parking lot of the store; a wallet containing Mr. Al Khader's driver's license and handgun carry permit, three $1 bills, business cards, and paperwork found on the ground near the corner of Lucerne and Latham where the defendant had been found; and a piece of red cloth that had been knotted into a face mask found on the ground just south of the Lucerne and Latham location.

Officer Thomas Mills of the Memphis Police Department testified that he discovered the defendant lying on the ground in an empty lot at the corner of Latham and Lucerne.  The defendant was wearing a white t-shirt, blue jeans, and purple and green shoes, appeared to be out of breath, and had several abrasions on his head and hands.  Officers took the defendant into custody and noticed a wallet, some business cards, and small papers in the area where the defendant had been.  Officer Mills then took the defendant back to the scene of the robbery, parking directly across the street from the store.  Officer Mills had the defendant get out of the car, and other officers inside the store advised Officer Mills that the victim identified the defendant.  Officer Mills's partner remained with the defendant outside while Officer Mills went inside the store to

review the videotape of the robbery. The defendant's clothes and shoes "matched what the video had shown." The defendant's clothing was subsequently collected into evidence. The label on the inside of the defendant's t-shirt lined up with the torn t-shirt fragment found in the parking lot of the store.

Sergeant Casey Minga of the Memphis Police Department Felony Response Bureau testified that the defendant was brought to his office the evening of the robbery. Sergeant Minga took photographs of the defendant because his clothes were torn and the victim had fought with one of the suspects. He also took photographs of bank receipts, business cards, and a child's note written to his/her father, all of which were found on the defendant's person. Mr. Al Khader identified the items as his. Sergeant Minga identified photographs he took of the defendant showing injuries to the defendant's forehead and hands and his torn shirt.

The defendant elected not to testify or present any proof.

## ANALYSIS

The defendant argues that the evidence is insufficient to support his convictions for aggravated robbery, saying that as to Count 1, nothing was taken from Mr. Al Shugaa personally and that as to Count 2, Mr. Al Khader was unable to identify the defendant. The State contends that the evidence is sufficient in Count 1 because Mr. Al Shugaa was exercising actual or constructive possession over the money in the store's cash register when the defendant pointed a gun at him and the second robber forced him to open the register and, in Count 2, Mr. Al Khader identified the defendant when he was brought back to the scene of the robbery for a show-up. We agree with the State.

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). The same standard applies whether the finding of guilt is predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

4

A criminal offense may be established entirely by circumstantial evidence. State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010). It is for the jury to determine the weight to be given the circumstantial evidence and the extent to which the circumstances are consistent with the guilt of the defendant and inconsistent with his innocence. State v. James, 315 S.W.3d 440, 456 (Tenn. 2010). In addition, the State does not have the duty to exclude every other reasonable hypothesis except that of the defendant's guilt in order to obtain a conviction based solely on circumstantial evidence. See State v. Dorantes, 331 S.W.3d 370, 380-81 (Tenn. 2011) (adopting the federal standard of review for cases in which the evidence is entirely circumstantial).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Aggravated robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear" when it is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. §§ 39-13-401(a), -402(a)(1).

In the light most favorable to the State, the evidence shows that the defendant and his accomplice robbed the Shop and Save store and Mr. Al Khader at gunpoint. The defendant argues that the evidence is insufficient to sustain his conviction for the aggravated robbery of Mr. Al Shugaa because no money was taken from Mr. Al Shugaa

personally but, instead, from the store's cash register. However, as the State points out, this court has previously held in a similar case that a store clerk operating a cash register may be considered as the "owner" of property for the purposes of aggravated robbery. See State v. Eric Lebron Hale, No. M2011-02138-CCA-R3-CD, 2012 WL 3776673, at *7 (Tenn. Crim. App. Aug. 31, 2012):

> Our criminal Code defines the term "owner" as "a person, other than the defendant, who has possession of or any interest other than a mortgage, deed of trust or security interest in property, even though that possession or interest is unlawful and without whose consent the defendant has no authority to exert control over the property." T.C.A. § 39-11-106(a)(26). "Also, an owner's possession of the property may be 'actual or constructive.'" State v. March, 293 S.W.3d 576, 592 (Tenn. Crim. App. 2008) (citing T.C.A. § 39-14-401(3); State v. Joel Christian Parker, No. M2001-00773-CCA-R3-CD (Tenn. Crim. App., Nashville, Dec. 18, 2002); State v. Gordon Scott Katz, No. E1999-01220-CCA-R3-CD (Tenn. Crim. App., Knoxville, Oct. 2, 2000)). Under the circumstances of this case, ownership sufficient to satisfy the requirements of the theft statute could lie with either [the store clerk] or with [the store owner]. March, 293 S.W.3d at 592 (citing Stafford v. State, 489 S.W.2d 46, 47 (Tenn. Crim. App. 1972)).

The defendant was apprehended a few blocks from the store and was wearing a torn t-shirt. Mr. Al Khader's wallet and store receipts were found near the defendant. Mr. Al Khader identified the defendant when he was brought back to the store for a show-up and said that the defendant was wearing the same shirt that he wore during the robbery. A fragment of a white t-shirt found in the store's parking lot lined up with a torn hole in the defendant's t-shirt. "Identification of a defendant as the person who committed the offense for which he or she is on trial is a question of fact for the jury's determination upon consideration of all competent proof." State v. Thomas, 158 S.W.3d 361, 388 (Tenn. 2005) (citing State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993)). The jury assessed the credibility of the witnesses, and we will not second-guess the jury's determination. Accordingly, the evidence is sufficient for a rational trier of fact to find that the defendant committed the offenses.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE

6